# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ROBERT BELL,

                    Petitioner,                          Civil Action No. 22-3373 (JXN)

           v.

                                                         **<u>OPINION</u>**

PATRICK A. NOGAN, *et al.*,

                    Respondents.

<u>**NEALS**</u>, District Judge

This matter comes before the Court on the Petition for a writ of habeas corpus filed by *pro se* Petitioner Robert Bell ("Petitioner") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the Petition. (ECF No. 8.) For the reasons expressed below, the Court will deny the Petition and will deny Petitioner a certificate of appealability.

## I.    BACKGROUND[1]

The New Jersey Superior Court, Appellate Division, provided the following factual summary of the proofs of trial:

> The charges against [Petitioner] arose from allegations [that] he drugged and sexually assaulted Barbara[2], the juvenile daughter of his long-term girlfriend Tonya. ...

---

[1] The factual background is taken from the record submitted by the parties; the facts relevant to the individual claims for relief are discussed in the analysis section of the Opinion.

[2] The New Jersey state courts "employed initials and pseudonyms for defendant, the juvenile victim, and the victim's family member to protect the victim's privacy." *State v. R.B.*, A-0736-15T1, 2018 WL 345855 at * 1, n.1. The Court will follow the same pseudonyms for the sake of consistency.

The trial evidence showed that Barbara was born on May 20, 1999. Tonya and [Petitioner] started dating in 2000 and in 2008, [Petitioner] began staying at Tonya's apartment. [Petitioner] and Tonya had two children together, Richard and Jamie. They lived in Tonya's apartment with Tonya and Barbara.

[Petitioner] worked as a truck driver and was away during the week, but stayed in the apartment with Tonya and the three children on the weekends. [Petitioner] had a room at his mother's house as well, but had a key to Tonya's apartment. [Petitioner] went to the apartment each week late on Friday or early Saturday and left Sunday night or early Monday morning.

Tonya worked every other Saturday from 8 a.m. to 2 p.m. Barbara testified that when her mother was not home, [Petitioner] was "in charge." Richard testified that Tonya and [Petitioner] were "in charge" at home. Tonya explained that she and [Petitioner] made the rules in the house and disciplined the children. She "normally handle[d] anything that [occurred] with the children" because [Petitioner] was not present during the week, but on the weekends, she and [Petitioner] shared those responsibilities. On the weekends, Tonya, [Petitioner,] and the three children went out as a family to eat, to the shore, or to the movies.

Barbara shared a bedroom with Richard and Jamie, and Tonya and [Petitioner] slept in the apartment's other bedroom. Barbara shared a bunk bed with her sister Jamie, and Richard slept on a separate single bed.

Barbara testified that [Petitioner] had a history of giving her pills. [Petitioner] gave her pills on the weekends "[e]very time he [came] home." [Petitioner] told her the pills "prevent[ed] [her] from getting sick" and she believed they did. The pills made her feel dizzy or tired. Sometimes, the pills made her feel like she was "in a daze" when she woke up.

Barbara also testified that on one occasion when she was ten or eleven years old, she felt someone touching her as she slept in her bed. She opened her eyes and saw defendant lift up her panties, open her vagina, and take pictures. Barbara said, "What are you doing?" and [Petitioner] "darted out the room."

About a year later, when Barbara was eleven or twelve, she was in her bed sleeping when she realized [Petitioner] was on top of her. She said, "Get off of me," and he told her, "Shhh" and to give him a kiss. She said, "Okay, just get off of me." He said, "If you give me a kiss and I'll get off of you." Barbara kissed [Petitioner] on the lips and he said, "Give me a hug," and she did. Barbara said "just get off of me." He said "give me one more kiss." She kissed [Petitioner] again and he left.

On the evening of Saturday, June 9, 2012, Tonya, [Petitioner,] and the three children were at the apartment. Barbara, who turned thirteen three weeks earlier, sat at the computer in the living room. While Tonya was in her bedroom, [Petitioner] gave Barbara "four or five or six pills," which were many more than he normally gave

her. He said, "Here, take these pills." Barbara took the pills and then felt tired. She recalled walking to her bed and next remembered waking up in an ambulance.

On Sunday morning, June 10, 2012, eleven-year-old Richard awoke and saw Barbara lying on the floor of their bedroom. Richard also saw [Petitioner], who had just entered the room, lift Barbara from the floor and place her on Richard's bed. Richard went to Tonya's room and told her that something was wrong with Barbara. Tonya went to the children's bedroom and saw that Barbara was unresponsive. [Petitioner] called 9-1-1.

Paramedics arrived and found Barbara unresponsive and secreting fluids from her mouth. They brought Barbara by ambulance to the Jersey City Medical Center.

Barbara was in critical condition upon her arrival at the hospital. She was later transferred to the pediatric intensive care unit at Newark Beth Israel Hospital where she remained for four days until her discharge. Tests performed showed she had opiates in her system. The Department of Child Protection and Permanency was called[,] and Barbara reported to a caseworker that [Petitioner] had touched her inappropriately in the past.

A physician at Newark Beth Israel Hospital, who was qualified at trial as an expert in pediatrics and child abuse pediatrics, performed a complete physical examination of Barbara and took vaginal swabs to collect evidence of a sexual assault. She opined [that] Barbara had suffered an overdose of opiates that changed her mental status and her respiratory functionality. She explained that opiates could cause a patient to be so mentally compromised that the patient is unaware of what is happening.

DNA from sperm cells found on the vaginal swabs was compared to [Petitioner's] and Barbara's DNA. A forensic scientist testified that Barbara and [Petitioner] could not be excluded as contributors to the DNA found. The expert also explained it was 18.3 million more times likely the DNA found was [Petitioner's] as compared to the African-American population, 208 million times more likely as compared to the Caucasian population, and 26.2 million times more likely as compared to the Hispanic population. The analyst explained that "when you have a likelihood ratio greater than 1,000, that lends very strong support" that it is the person's DNA.

Barbara testified she had never had sex, and did not know how the sperm and DNA entered her vagina. She also testified [that Petitioner] touched her on other occasions "when he came home from work on the weekend" but she could not recall how many other times it occurred or when the other occurrences took place. She did not, however, provide any facts concerning any other alleged inappropriate touching or assaults by [Petitioner].

*State v. R.B.*, A-0736-15T1, 2018 WL 345855 at * 1-3 (N.J. Super Ct. App. Div. January 10, 2018).

Petitioner was charged in an indictment with first-degree aggravated sexual assault, N.J.S.A. § 2C:14–2(a) (Count One); second-degree sexual assault, N.J.S.A. § 2C:14–2(b) (Count Two); second-degree endangering the welfare of a child, N.J.S.A. § 2C:24–4(a) (Count Three); fourth-degree child abuse, N.J.S.A. § 9:6–1 (Counts Four and Six); first-degree endangering the welfare of a child, N.J.S.A. § 2C:24–4(a) (Count Five); third-degree distribution of a controlled dangerous substance, N.J.S.A. § 2C:35–5(a)(1) and N.J.S.A. § 2C:35–5(b)(5) (Count Seven); second-degree endangering the welfare of a child, N.J.S.A. § 2C:24–4(a) (Count Eight); and fourth-degree child abuse, N.J.S.A. § 9:6–3 (Count Nine). (*See* ECF No. 8-2 at 53-55.) Prior to trial, the indictment was amended without objection. Count Two was amended to allege the sexual assault was committed between "May 2010 and May 2012." *R.B.*, A-0736-15T1, 2018 WL 345855 at * 1, n.2. Count Five was amended to allege a violation of N.J.S.A. 2C:24-4(b). *Id.* Count Seven, which originally alleged distribution of benzodiazepines and opiates, was amended to allege distribution of opiates. *Id.* The trial court also granted the State's motion to dismiss the fourth-degree child abuse charges in Counts Four, Six, and Nine. (*See* ECF No. 8-10 at 3:18 to 4:13.)

The jury found Petitioner guilty on the six remaining charges in the indictment. *R.B.*, A-0736-15T1, 2018 WL 345855 at * 3. Petitioner was sentenced to an aggregate prison term of forty-five years with thirty years without parole eligibility.[3] *Id.*

Petitioner filed a Notice of Appeal with the Appellate Division. On January 10, 2018, the Appellate Division affirmed Petitioner's conviction and sentence, except the court vacated the first-degree conviction for endangering the welfare of a child (Count Three), remanded for an

---

[3] The court sentenced Petitioner to twenty years in prison, subject to the No Early Release Act ("NERA"), N.J.S.A. § 2C:43-7.2, on Count One. On Count Two, Petitioner received a ten-year prison term, subject to NERA, consecutive to Count One. On Count Three, the court sentenced him to ten years in prison, concurrent to Counts One and Two. On Count Five, the court imposed a twenty-year prison term, concurrent to Counts One and Two. On Count Seven, Petitioner received a five-year prison term. And, on Count Eight, the Court sentenced Petitioner to ten years in prison, with Counts Seven and Eight to run consecutive. (ECF No. 8-2 at 66-73.)

adjustment to second-degree, and ordered resentencing on that charge as a second-degree offense. *R.B.*, A-0736-15T1, 2018 WL 345855. The New Jersey Supreme Court denied Petitioner's petition for certification. (*See* ECF No. 8-2 at 149.)

Petitioner filed a *pro se* post-conviction relief ("PCR") petition. (ECF No. 8-2 at 252-255.) Counsel submitted a brief in support of the PCR. (*Id.* at 150-171.) On June 24, 2019, the PCR court denied Petitioner's petition by oral decision. (*See* ECF No. 8-15.) An Order was entered on the same date. (ECF No. 8-2 at 260.) Petitioner appealed, and the Appellate Division affirmed the denial. *State v. R.B.*, A-5301-18, 2021 WL 3731883 (N.J. Super Ct. App. Div. August 24, 2021). The New Jersey Supreme Court then denied his petition for certification. *State v. R.B.*, 272 A.3d 1241 (2022).

Petitioner filed the instant habeas petition on June 1, 2022. (ECF No. 1.) Petitioner asserts five claims for habeas relief. (*See* ECF No. 1-1.) Respondents filed an answer. (ECF No. 8.) Petitioner did not file a reply.

## II.    STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See* Eley v. Erickson, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See* Renico v. Lett, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility

determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

## III.  DISCUSSION

### A.  Sufficiency of the Evidence (Grounds One, Two, and Four)

In Grounds One, Two, and Four, Petitioner argues that his convictions under several counts in the indictment must be vacated because the State failed to produce sufficient evidence to establish various elements of the crimes charged. (ECF No. 1-1 at 14-23, 30-33.)

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020) ("[T]he clearly established federal law governing the insufficient evidence claim is the standard set out by the Supreme Court in *Jackson* . . . .").

The dispositive question under *Jackson* is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). The analysis under *Jackson* requires courts to analyze the "substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In conducting this review, "all of the evidence is to be considered in the light most favorable to the prosecution." *Id.*; *see also Orban v. Vaughn*, 123 F.3d 727, 731 (3d Cir. 1997). Thus, where the evidence could support conflicting inferences, the habeas court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution." *Jackson*, 443 U.S. at 326; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011). What is more, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Renico*, 559 U.S. at 773.

Considering this standard, the Court will address Petitioner's Grounds One, Two, and Four in turn.[4]

---

[4] Petitioner's third ground for habeas relief also raises a claim the State failed to produce sufficient evidence to prove an essential element of one of his convictions. (ECF No. 1-1 at 24-29.) Petitioner argues that his conviction for first-degree endangering the welfare of a child (Count Five), N.J.S.A. § 2C:24-4(b)(3), must be vacated because the State failed to prove that he was a "parent, guardian, or other person legally charged with the care of custody of" the victim. (*Id.*) However, Petitioner raised this claim on direct appeal, and the Appellate Division granted Petitioner's request for relief. *R.B.*, A-0736-15T1, 2018 WL 345855 at * 7-9. The Appellate Division found the record was "devoid of any evidence [Petitioner] had a de jure status as Barbara's parent or guardian." (*Id.* at 9.) Therefore, the Appellate Division "vacate[d] [Petitioner's] conviction for first-degree endangering, N.J.S.A. 2C:24-4(b)(3), under count five, and remand[ed] for entry of an amended judgment of conviction for a second-degree offense and resentencing on count five." Here, Petitioner requests that the Court vacate his first-degree endangering the welfare of a child conviction. As the State court already granted Petitioner the relief requested here, Petitioner's third ground for habeas relief is dismissed as moot.

1. **Ground One: Insufficient Evidence and Jury Unanimity- Second-Degree Sexual Assault (Count Two)**

In Ground One, Petitioner argues that his conviction for second-degree sexual assault under N.J.S.A. § 2C:14-2(b) (Count Two) must be reversed. (ECF No. 1-1 at 14-19.) Petitioner claims that the jury was "allowed to convict" him without necessarily finding the essential element that the victim was "less than 13 years old" at the time of the offense. (*Id.*) Petitioner alleges that because Count Two alleged that Petitioner sexually abused the victim from "May 2010 through May 2012," and the victim turned thirteen on May 20, 2012, the jury's verdict on Count Two may not have been unanimous, and some jurors may have convicted Petitioner based on incidents that happened between May 20 and 30, 2012, after the victim turned thirteen. (*Id.*)

Petitioner raised this claim on direct appeal, and the Appellate Division found the claim meritless, reasoning as follows:

> "The notion of unanimity requires 'jurors to be in substantial agreement as to just what a defendant did' before determining his or her guilt or innocence." *State v. Cagno*, 211 N.J. 488, 516 (2012) (quoting *State v. Frisby*, 174 N.J. 583, 596 (2002)). "Ordinarily, a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict." *Ibid.* (quoting *State v. Parker*, 124 N.J. 628, 641 (1991)).
>
> However, "[t]here may be circumstances in which it appears that a genuine possibility of jury confusion exists or that a conviction may occur as a result of different jurors concluding that a defendant committed conceptually distinct acts." *Id.* at 516–17 (quoting *Parker*, 124 N.J. at 641). Such circumstances include when: "(1) a single crime could be proven by different theories supported by different evidence, and there is a reasonable likelihood that all jurors will not unanimously agree that the defendant's guilt was proven by the same theory; (2) the underlying facts are very complex; (3) the allegations of one count are either contradictory or marginally related to each other; (4) the indictment and proof at trial varies; or (5) there is strong evidence of jury confusion." *Id.* at 517; *see also Parker*, 124 N.J. at 635–36. Generally, "in cases where there is a danger of a fragmented verdict the trial court must upon request offer a specific unanimity instruction." *Cagno*, 211 N.J. at 517 (quoting *Frisby*, 174 N.J. at 597–98).

We do not find here any of the circumstances the Court in *Frisby* noted might require a specific unanimity instruction. The facts supporting the sexual assault charge were simple. Barbara could only recall, and only testified about, two incidents of sexual assault with [Petitioner] occurring prior to her May 20, 2012 thirteenth birthday. The first occurred when she was ten or eleven, and the second occurred a year later. There was no evidence that [Petitioner] assaulted Barbara at any time during the three week period following her thirteenth birthday and prior to the June 2012 incident that was the subject of other charges in the indictment.

In addition, as part of its jury instructions on the sexual assault alleged in count two, the court explained that the State was required to prove beyond a reasonable doubt that Barbara "was less than [thirteen] at the time of the sexual contact." The court further instructed that

> [t]he second element the State must prove beyond a reasonable doubt is that [Barbara] was less than 13 years old at the time the sexual conduct occurred. The State must prove only the age of [Barbara] at the time of the offense beyond a reasonable doubt. It does not have to prove that the [Petitioner] knew or reasonabl[ly] should have known [Barbara] was under 13.

The jury was also instructed [that] its verdict on the charge must be unanimous. The judge told the jury that its verdict "must be unanimous as to each charge," which means that all jurors "must agree if the defendant is guilty or not guilty on each charge."

The record is devoid of any evidence showing a "genuine possibility of jury confusion" or that [Petitioner's] conviction of the second-degree sexual assault occurred "as a result of different jurors concluding that a defendant committed conceptually distinct acts." *Cagno*, 211 N.J. at 516–17; *see also State v. T.C.*, 347 N.J. Super. 219, 243–44 (App. Div. 2002) (finding there was no need for a specific unanimity instruction because "[t]here was but one theory of ongoing emotional and physical abuse over a period of time, which consisted of a number of 'conceptually similar acts committed by the defendant'").

The evidence supported the jury's determination that [Petitioner] committed a second-degree sexual assault prior to Barbara's thirteenth birthday and there was no evidence permitting a finding [that Petitioner] sexually assaulted Barbara between May 20 and May 30, 2012. The court carefully and clearly instructed the jury that it must be unanimous and there was no objection to the instruction at trial. We presume the jury followed the instructions given by the court, *see State v. Winder*, 200 N.J. 231, 256 (2009), and [Petitioner] presents no evidence or argument supporting an abandonment of that presumption here. We therefore find no basis to reverse [Petitioner's] conviction for second-degree sexual assault under count two based on any purported error in failing to provide a specific unanimity instruction.

*R.B.*, A-0736-15T1, 2018 WL 345855 at * 4-5.

Petitioner argues that the jury was "allowed to convict" him of second-degree sexual assault without finding the element that the victim was less than thirteen at the time of the sexual assault as charged in Count Two. "When assessing such claims on a petition for habeas relief from a state conviction, the sufficiency of the evidence standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Robertson v. Klem*, 580 F.3d 159, 165 (3d Cir.2009) (quoting *Jackson*, 443 U.S. at 324 n.16). Count Two of the indictment charged second-degree sexual assault pursuant to N.J.S.A. § 2C:14-2b. The statute reads, in pertinent part:

> b. An actor is guilty of sexual assault if he commits an act of sexual contact with a victim who is less than 13 years old and the actor is at least four years older than the victim.

*Id.* The New Jersey Supreme Court has found that a tender-years-sexual assault under N.J.S.A. § 2C:14-2b contains three key elements: "(1) a victim who is less than thirteen years old, (2) a defendant-actor who is at least four years older than the victim, and (3) a sexual contact with a victim under the critical age." *State v. Zeidell*, 154 N.J. 417, 428 (1998).

Here, the Appellate Division explained that the victim testified that she could only recall two incidents of Petitioner sexually assaulting her. The first occurred when she was ten or eleven, and the second occurred a year later. The Appellate Division noted that there was no evidence presented that Petitioner sexually assaulted the victim during the three-week period following her thirteenth birthday and prior to the June 2012 incident that was the subject of other charges in the indictment.

The victim testified that she recalled an incident from when she was about "ten or eleven," and she explained the following happened:

> I was sleeping in my room and then - - and then I felt somebody touching me. Like - - I - -I'm a light sleeper and so I wake up to anything. And so I felt somebody touching me and I - - I - - I just - - I didn't open my eyes fully. I just like - - like - - like squinted my eyes, but I could still see him. It was [Petitioner] and he - - he - - lifted up my panties and he - - he - - he opened my - - vagina and he - - he - - he started to take pictures and - - and - - and I - - and I ultimately said what are you doing and he - - he didn't say anything. He - - he - - he darted out of the room.

(ECF No. 8-10 at 61:17 to 62:6.) The victim then testified to the following second incident:

> It's like a year later. It was - - I was sleeping again, but this time I was - - I was on the single bed because we already had our new bunk beds. I was on the single bed because me and my brother and sister, as I said, we switched - - we switched beds again. And all of a sudden, when I was sleeping, [Petitioner] got on top of me and I woke up. He said - - and I said get off of me really loud and he said - - he told me to shhh and - - and - - and give him a kiss and I - - I said okay, just get off of me. He said if you give me a kiss and I'll get off of you. So I did it and he was like - - he said give me a hug and so I did it. And then - - and I said, just get off of me, and I - - I kept - - I just wanted him to get off of me. He was saying give me one more kiss and I was - - like okay. And after that, he - - he got up. He left my room.

(*Id.* at 64:4-19.) Finally, the victim testified that there were other incidents she could not describe, but they happened when he would come home from work on the weekends. (*Id.* at 65:25 to 66:6.)

The Appellate Division found that "the evidence supported the jury's determination that [Petitioner] committed a second-degree sexual assault prior to Barbara's thirteenth birthday and there was no evidence permitting a finding [Petitioner] sexually assaulted Barbara between May 20 and May 30, 2012." *R.B.*, A-0736-15T1, 2018 WL 345855 at * 5. Based on the victim's testimony that she was sexually assaulted at the age ten or eleven, this Court finds that "the record evidence could reasonably support . . . beyond a reasonable doubt" a finding of guilty on the charge of second-degree sexual assault of the victim when she was under the age of thirteen. *Jackson*, 443 U.S. at 318. This Court finds that the Appellate Division did not unreasonably apply clearly established federal law or deny this claim based on an unreasonable determination of the facts.

Regarding Petitioner's argument that the jury should have been instructed on unanimity, a jury "instruction [that] was allegedly incorrect under state law is not a basis for habeas relief."

*Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), cert. denied, 534 U.S. 919 (2001). A petitioner can, therefore, only show an entitlement to habeas relief based upon allegedly inadequate jury instructions where the petitioner proves that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). That a challenged instruction was "undesirable, erroneous, or even universally condemned" is insufficient to warrant habeas relief; a petitioner can only prevail on such a claim by showing that the instruction rendered his trial fundamentally unfair. *Id.* Additionally, courts may not judge the instruction in isolation but must consider the instruction "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72. Where the error is the omission of an instruction, a petitioner's burden is "especially heavy" because an omission is "less likely to be prejudicial than a misstatement of the law." *See Estelle*, 502 U.S. at 155. In such a case, a petitioner must demonstrate that the omission was so "inconsistent with the rudimentary demands of fair procedure" as to result in a miscarriage of justice. *See Smith v. Arvonio*, Civ. No. 93-25, 1994 WL 327123, *3 (D.N.J. June 24, 1994) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Here, the Appellate Division did not unreasonably apply clearly established federal law when it rejected Plaintiff's unanimity argument. The Appellate Division explained that "the judge told the jury that its verdict 'must be unanimous as to each charge,' which means that all jurors 'must agree if the defendant is guilty or not guilty on each charge.'" *R.B.*, A-0736-15T1, 2018 WL 345855 at * 5. Additionally, the Appellate Division found that there was no evidence of a "genuine possibility of jury confusion" or that Petitioner's conviction on Count Two occurred "as a result of different jurors concluding that [Petitioner] committed conceptually distinct acts." *Id.* The jury was instructed that their decision must be unanimous and that the State must prove beyond a reasonable

doubt that the victim was less than thirteen at the time of the sexual assault. Petitioner has not shown that the lack of a special unanimity instruction rendered his trial fundamentally unfair or resulted in a miscarriage of justice. *Hill*, 368 U.S. at 428. Accordingly, Petitioner has not raised a valid constitutional claim and Petitioner is denied habeas relief with respect to Ground One.

### 2. Ground Two: Insufficient Evidence- First-Degree Sexual Assault (Count One)

In Ground Two, Petitioner claims that his conviction for first-degree aggravated sexual assault, N.J.S.A § 2C:14-2(a)(2)(c) (Count One) should be reversed. (ECF No. 1-1 at 20-23.) Petitioner argues that the State failed to present sufficient evidence to establish the essential element that he stood "*in loco parentis* within the household" during the June 2012 incident. (*Id.*)

The Appellate Division denied this claim on direct appeal, ruling as follows:

> "Faith in the ability of a jury to examine evidence critically and to apply the law impartially serves as a cornerstone of our system of criminal justice." *State v. Faucette*, 439 N.J. Super. 241, 269 (App. Div. 2015) (quoting *State v. Afanador*, 134 N.J. 162, 178 (1993)). A "conviction should not be disturbed on appeal 'unless it clearly appears that there was a miscarriage of justice under the law.'" *State v. Jackson*, 211 N.J. 394, 413 (2012) (quoting R. 2:10–1). Similarly, Rule 3:20–1 provides that a court "shall not . . . set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law." There is no "miscarriage of justice" when "'any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present.'" *Jackson*, 211 N.J. at 413–14 (quoting *Afanador*, 134 N.J. at 178). Applying these principles, we are satisfied there was sufficient evidence upon which a rational trier of fact could conclude the State proved beyond a reasonable doubt that in June 2012 [Petitioner] stood *in loco parentis* to Barbara.
>
> Under N.J.S.A. 2C:14–2(a)(2)(c), "[a]n actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person" if "[t]he victim is at least 13 but less than 16" and "[t]he actor is a resource family parent, a guardian, or stands *in loco parentis* within the household." "*In loco parentis* literally translated means 'in the place of a parent.'" *Hardwicke v. Am. Boychoir Sch.*, 188 N.J. 69, 91 (2006) (quoting Black's Law Dictionary 803 (8th ed. 2004)). "Black's Law Dictionary further describes the phrase as 'relating to, or acting as a temporary

guardian or caregiver of a child, taking on all or some of the responsibilities of a parent.'" *Ibid.* (quoting Black's Law Dictionary, at 803).

A person stands *in loco parentis* to a child when he or she "put[s] himself [or herself] in the situation of the lawful father [or mother] of the child with reference to the father's [or mother's] office and duty of making provision for the child." *Cumberland Cty. Bd. of Soc. Servs. v. W.J.P.*, 333 N.J. Super. 362, 366 (App. Div. 2000) (quoting *D. v. D.*, 56 N.J. Super. 357, 361 (App. Div. 1959)). Generally, the person "function[s] as a parent," including "'the responsibility to maintain, rear and educate the child,' as well as the duties of 'supervision, care and rehabilitation.'" *Hardwicke*, 188 N.J. at 91 (quoting *Dale v. B.S.A.*, 160 N.J. 562, 602 (1999), rev'd on other grounds, 530 U.S. 640 (2000)).

Here, the court correctly instructed the jury in accordance with the Model Jury Charge, which is consistent with the Court's holding in *Hardwicke*, 188 N.J. at 91. The jury was instructed [that] the State had to prove "that [Petitioner] is a guardian or stands *in loco parentis* within the household of [Barbara]," and explained that

> [an] *in loco parentis* relationship occurs when a person acts as a temporary guardian or caregiver of a child, taking on all or some of the responsibilities of a parent. One of the factors you may consider to determine whether [Petitioner] stood *in loco parentis* during the relevant period or whether [Petitioner] took on the responsibility to maintain, rear, educate [Barbara], as well as the duties of supervision, care [] and rehabilitation of [Barbara].

The evidence showed that although [Petitioner] had a room available to him at his mother's home, he traveled during the week and, commencing in 2008 and continuing through the commission of the sexual assault upon Barbara in June 2012, he returned to Tonya's apartment each weekend. Barbara, Tonya, and [Petitioner] and Tonya's two children resided in the apartment. The evidence supports the reasonable inference that he resided with them when he was not travelling for work.

When [Petitioner] was in the home, he, Tonya[,] and the three children functioned as a family unit, with [Petitioner] fulfilling the role of parental figure. They went out to eat, to the shore, and to the movies as a family. [Petitioner] and Tonya disciplined the children, including Barbara, and the evidence showed that he and Tonya were "in charge" of the home and children. When Tonya worked on Saturdays, [Petitioner] stayed at the apartment with the children and solely cared for and supervised them. Tonya testified they shared responsibility for all of the children.

[Petitioner] also portrayed himself to Barbara as a parental figure. For years, he routinely gave her pills under the guise of administering medications as her caretaker. He told her the pills would prevent her from becoming sick and she took

the pills because he presented himself as her caregiver and, for that reason, she believed him.

[Petitioner] was such a consistent presence in Barbara's life that she referred to him as her stepfather and described him as "another father in [her] life." She asked him for money when she needed it, and he gave her money when she requested it. [Petitioner] was not a babysitter or an occasional or temporary caretaker. The evidence showed he consistently resided in the home over a period of years, functioned as an integral part of Barbara's family unit, and in various ways supervised, cared for and provided for Barbara.

There was sufficient evidence upon which a rational fact-finder could find beyond a reasonable doubt that [Petitioner] "[took] on all or some of the responsibilities of a parent" and "function[ed] as a parent." *Ibid.* And the jurors were permitted to use their personal experience and common sense to identify the characteristics of a parental relationship. *See State v. Vick*, 117 N.J. 288, 291–92 (1989). The jury's verdict on count one is supported by sufficient evidence, does not constitute a miscarriage of justice, and is affirmed. *See Jackson*, 211 N.J. at 413–14.

*R.B.*, A-0736-15T1, 2018 WL 345855 at * 5-6.

As explained above, for an insufficient evidence claim, the standard set out in *Jackson* requires the court to view the evidence in the "light most favorable to the prosecution" and then decide if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Here, Petitioner argues that the State failed to prove the element of "*in loco parentis*" beyond a reasonable doubt. The Appellate Division noted that the trial court provided the jury with the Model Jury Charge and informed the jury that an "*in loco parentis* relationship occurs when a person acts as a temporary guardian or caregiver of a child, taking on all or some of the responsibilities of a parent." The trial evidence showed that Petitioner had been in a relationship with the victim's mother for twelve years, and they began dating when the victim was only a year old. (ECF No. 8-10 at 79:18-21, 88:2-7.) When the victim was seven, Petitioner moved into the victim's home. (*Id.* at 46:15-18.) The victim referred to Petitioner as her stepfather, and when he was home from work on the weekends, he would typically stay with the victim, her mother, and her siblings. (*Id.* at 45:11-13; 47:19-22.) Additionally, while the victim's

16

mother was at work, Petitioner was left in charge of the house and children. (*Id.* at 48:9-17.) The trial testimony showed that Petitioner and the victim's mother shared rulemaking and disciplinary roles. (*Id.* at 91:7-21.)

The Appellate Division applied the *Jackson* standard and, in reviewing the trial evidence as to Count One, found a rational trier of fact could find beyond a reasonable doubt that Petitioner acted *in loco parentis* to the victim and was guilty of first-degree sexual assault. This conclusion is neither contrary to nor an unreasonable application of federal law. Considering the evidence summarized above, a reasonable juror could find Petitioner guilty of the first-degree sexual assault charge in Count One. As such, this habeas claim is denied as meritless.

### 3. Ground Four: Sufficiency of the Evidence- Child Endangerment (Counts Three and Eight)

In his fourth ground of habeas relief, Petitioner argues his convictions for second-degree endangering the welfare of a child, N.J.S.A. § 2C:24–4(a)(1) (Count Three), and second-degree endangering the welfare of a child, N.J.S.A. § 2C:24–4(a)(2) (Count Eight) should be reversed. (ECF No. 1-1 at 30-33.) Petitioner argues that under both Counts Three and Eight, the State failed to prove beyond a reasonable doubt the essential element that he had a "legal duty to care" for the victim or that he had "assumed responsibility" for her. (*Id.*)

Count Three charged Petitioner with second-degree endangering pursuant to N.J.S.A. § 2C:24-4a(1). The statute reads, in pertinent part:

> a. (1) Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.

N.J.S.A. § 2C:24-4a(1). Count Eight charged Petitioner with second-degree endangering pursuant to N.J.S.A. § 2C:24-4a(2). That provision provides:

> a. (2) Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who causes the child harm that would make the child an abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3 and P.L.1974, c.199, s.1 (C.9:6-8.21) is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.

N.J.S.A. 2C:24-4a(2). Both statutes elevate the crime from a third-degree crime to a second-degree crime if it is committed by a "person having a legal duty for the care of a child or who has assumed the responsibility for the care of a child." N.J.S.A. § 2C:24-4a(1) and N.J.S.A. § 2C:24-4a(2).

Petitioner raised this claim on direct appeal, and the Appellate Division found it meritless. The Appellate Division reasoned as follows:

> [B]ased on our review of the record and for the reasons already explained, there was ample evidence permitting a rational fact-finder to find beyond a reasonable doubt that [Petitioner] assumed responsibility for Barbara's care. *See Jackson*, 211 N.J. at 413–14. A person who "has assumed responsibility" includes only "those who have assumed a general and ongoing responsibility for the care of the child." *State v. Galloway*, 133 N.J. 631, 661 (1993). The elevation of the offense arises from "the profound harm that can be inflicted on a child by one who holds a position of trust." *State v. Sumulikoski*, 221 N.J. 93, 108 (2015).

> The evidence established [Petitioner] assumed a regular, continuing and recurrent caretaking function over Barbara. As noted, for many years he, Tonya, Barbara, Richard and Jamie lived as a family unit; [Petitioner] had responsibility for the care and supervision of all of the children. [Petitioner] also assumed the role of a caretaker to Barbara by consistently providing her with medications he said would avoid sickness and make her feel better. As such, there was sufficient evidence supporting [Petitioner's] second-degree convictions under counts three and eight.

*R.B.*, A-0736-15T1, 2018 WL 345855 at * 9.

The Appellate Division denied this claim, finding that based on all of the above summarized evidence, Petitioner "assumed regular, continuing and recurrent caretaking function over [the victim]" and a rational fact-finder could find beyond a reasonable doubt that Petitioner assumed responsibility for her care. The Appellate Division applied the standard required under *Jackson*. 443 U.S. at 319 (finding that "after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") Additionally, considering the trial evidence that has been summarized at length above, the Appellate Division's decision was not an unreasonable application of the standard set forth in *Jackson*. The victim referred to Petitioner as her stepfather, and when he was home from work on the weekends, he would typically stay with the victim, her mother, and her siblings. (*Id.* at 45:11-13; 47:19-22.) Additionally, while the victim's mother was at work, Petitioner was left in charge of the house and children. (*Id.* at 48:9-17.) The trial testimony showed that Petitioner and the victim's mother shared rulemaking and disciplinary roles. (*Id.* at 91:7-21.) A rational trier of fact could have found beyond a reasonable doubt that Petitioner had assumed the responsibility to care for the victim and was guilty of second-degree endangering pursuant to N.J.S.A. §§ 2C:24-4a(1) and 2C:24-4a(2). Petitioner cannot demonstrate that the state court's adjudication was an unreasonable application of clearly established federal law. Thus, Petitioner's fourth ground for habeas relief is denied.

## B. Ground Five: Ineffective Assistance of Counsel

In Ground Five, Petitioner argues that trial counsel was ineffective for failing to investigate and call a DNA expert at trial. (ECF No. 1-1 at 34-38.) Petitioner argues that "prior to jury selection being completed, trial counsel, who had been representing [Petitioner] for two months, requested 'an adjournment in order to be able to have the public defender provide expert opinions on the DNA report.'" (*Id.* at 34.) Petitioner claims that an expert witness would have testified at trial that Petitioner's DNA was not found in the victim and trial counsel had a duty to "investigate into whether an expert witness would have substantiate[d] [Petitioner's] claim that he did not sexual[ly] assault Barbara." (*Id.* at 35.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective.  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See Strickland*, 466 U.S. at 690.  Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *Id.* at 689.  Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome."

*Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be followed." *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

On collateral appeal, the Appellate Division denied this claim, finding the following:

After reviewing the record and considering the standard established by the Supreme court in *State v. Preciose*, 129 N.J. 451, 462-63 (1992) and codified under Rule 3:22-10, the PCR judge found [Petitioner] did not make out a prima facie case of ineffective assistance of counsel and denied his application for an evidentiary hearing. We find no legal or factual basis to conclude the PCR judge abused his discretionary authority in reaching this conclusion. [Petitioner's] argument does not warrant further discussion in a written opinion. R. 2:11-3(e)(2).

*R.B.*, A-5301-18, 2021 WL 3731883 at *2. In an oral opinion, the PCR court summarized the DNA

evidence and related testimony as follows:

D.N.A. from sperm cells found on the vagina swab -- vagina -- vaginal swabs, excuse me, was compared to [Petitioner's] and Barbara's D.N.A. A forensic scientist testified at trial that Barbara and [Petitioner] could not be excluded as contributors to the D.N.A. found. The expert also explained it was 18.3 million more times likely that D.N.A. found was [Petitioners] as compared to the African American population, 208,000,000 times more likely as compared to the Caucasian population and 26.2 million times more likely as compared to the Hispanic population. The analyst explained that when -- "When you have a likelihood ratio greater than 1,000, that lends very strong support" that it is the person's D.N.A.

(ECF No. 8-15 at 10:25 to 11:13.) The PCR court cited the *Strickland* standard and noted that New

Jersey has adopted that standard for reviewing ineffective assistance of counsel claims. (*Id.* at 12:5

to 13:9.) The PCR court denied Petitioner's claim, reasoning as follows:

With regards to the trial attorney's performance, the trial court made a determination that Mr. O'Gureck was prepared to try the case on May -- in May 2015. Nothing in the record evinces that he was unprepared. The record does not show that Mr. O'Gureck had -- was unprepared in any way. He prepared an opening statement, he cross-examined [the] State's witnesses and delivered a summation based on the evidence presented at trial. It was clear throughout Mr. O'Gureck's -- you know, that Mr. O'Gureck's strategy was to cast doubt on the State's witnesses. He also asked for an adjournment to obtain the D.N.A. expert, that adjournment request was denied.

. . . Mr. O'Gureck's performance must be analyzed in its -- in its totality within the context of the State's proof of [P]etitioner's guilt, and that proof is very strong this Court finds.

There was a large amount of evidence offered throughout testimony and documented records that [P]etitioner was a caretaker of the victim, that he drugged and sexually assaulted the victim, he provides opiates to the victim to achieve this end. The victim overdosed on the opiates that he provided. Male D.N.A. was found

22

in the victim's body and [P]etitioner could not be excluded as the source of the D.N.A. Petitioner, therefore, has failed to establish counsel's performance leading up to the trial and that the trial was deficient. Thus, [P]etitioner failed to prove *Strickland's* first prong. Petitioner did not attempt to establish how he was prejudiced by counsel's performance. Therefore, the Court finds that the [P]etitioner has not met the required burden, thus, failing to meet the -- did not meet the required burden, thus, failing to meet the second prong of the *Strickland* test.

(*Id.* at 14:10 to 15:25.)

The Appellate Division applied the correct standard under *Strickland* when assessing Petitioner's claim. Therefore, this Court must apply AEDPA deference to the state court's decision unless it was contrary to or an unreasonable application of *Strickland*. *See Branch v. Sweeney*, 758 F.3d 226, 233 (3d Cir. 2014). The state court found that trial counsel was not ineffective for not investigating a DNA expert before trial, so this Court must be "doubly deferential" on habeas review. *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("When the claim at issue is for ineffective assistance of counsel, AEDPA review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" (quoting *Pinholster*, 563 U.S. at 190, *Burt v. Titlow*, 571 U.S. 12, 16 (2013))).

The record supports the Appellate Division's denial of this claim. Moreover, even if counsel had been somehow deficient for not retaining a DNA expert, Petitioner has not established prejudice in light of the strong evidence of his guilt discussed above. Additionally, prejudice resulting from counsel's ineffectiveness "cannot be based on mere speculation about the possibility of finding an expert witness, nor can it be based on mere speculation about the possible testimony." *Dobson v. United States*, No. 13-1711, 2016 WL 4941994, at *4 (D.N.J. Sept. 15, 2016) (citing *Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001)). As Petitioner has identified no expert

who was willing to provide testimony in support of his claim, he has failed to show any prejudice due to counsel's alleged failure to call such a witness. Accordingly, the state courts' rejection of this claim was not contrary to or an unreasonable application of *Strickland* or based on an unreasonable determination of the facts considering the evidence. Petitioner's ineffective assistance claim therefore fails to set forth a valid basis for habeas relief.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a proceeding under 28 U.S.C. § 2254 unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court will deny Petitioner a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus (ECF No. 1) is **DENIED,** and Petitioner is **DENIED** a certificate of appealability. An appropriate order will be entered.


**DATED**:  April 24, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge

24